## George W. Goodrich *vs.* Abraham Burbank.

The possessor of an assignable right to draw a certain quantity of water from a spring situated on land of another, which right is not limited as to the place or manner of its use but was used at the time by means of a pipe which led from the spring to his own land crossing a county road on the way, executed a conveyance to the assignee of "all the aqueduct rights and privileges" which he possessed in or to the spring, specifying the same, and adding these words, "meaning and intending hereby to convey to said assignee all the aqueduct rights connected with said spring," "from said spring to the county road," "so that from said spring said assignee shall have the right to maintain the aqueduct from said spring to the north line of said county road, and to dispose of the water entirely as he pleases, said assignor conveying his entire rights to said spring, water and aqueduct, and taking up the aqueduct south of said county road." *Held*, that the assignee took the right without limitation as to the place or manner of its use.

One possessed a right not limited as to the place or manner of its use to draw from a spring situated on land of another a quantity of water defined as so much as would run from the spring in a pipe of one and one quarter inch inside calibre which was laid to a point at a certain distance therefrom. *Held*, that he did not exceed this right by drawing the water in a pipe of that calibre so laid to a point at a shorter distance and on a different level as to be capable of discharging a larger quantity if it could discharge to its full capacity, but so connected with smaller pipes and restricted by them that it, with the smaller pipes, considered as one conduit, could not discharge a larger quantity.

A., being the possessor of a right to draw water from a spring situated on land of B., which right was reserved by A.'s grantor at the time he sold the land to B., cannot recover damages against B. for impurities in the water which he draws, caused by the flow into the spring of the waters of a brook which were running into it at the time of the reservation of the right, and were subsequently excluded, but which B. has restored to the channel on his own land in which they were running at the time of his purchase.

Tort for diversion of the water of a spring, situated on the defendant's land, from flowing through a pipe by which it was previously conducted to the plaintiff's land; and also for contaminating the water. This is a case which formerly came before this court on exceptions which were sustained in an opinion reported 12 Allen, 459. At the second trial in the superior court, before *Brigham*, J., the following facts appeared:

Both plaintiff and defendant derive all their title originally from Thomas F. Plunkett, who by deed dated March 22, 1850, conveyed to the defendant the lot of land where the spring is situated, making a reservation to himself and his heirs and assigns of "the right of taking so much water forever from the spring," "from which water is now taken in a pipe to supply the

grounds of W. H. Tyler," "as now runs in said pipe, so long as said pipe lasts, together with the right to replace the same with a pipe of one and one quarter inch inside calibre, and also the right of taking so much water from said spring as will run in said pipe of one and one quarter inch calibre when thus substituted for the present pipe ; together with the right to enter and repair said aqueduct at all times ; " "and said Burbank, his heirs and assigns, is not to molest said Plunkett, his heirs and assigns, in the use of the above reserved rights." By the decision of this court on the former exceptions, it was held that Plunkett reserved to himself thereby an assignable right to take the specified quantity of water, not annexed to any particular estate or limited as to the place or manner of its enjoyment. This right Plunkett conveyed to Tyler, who, while in possession of it, replaced the old pipe with a new pipe of one and one quarter inch inside calibre. Then Tyler conveyed the right to John H. Agnew, who executed to the plaintiff a deed dated July 4, 1857, giving, granting, &c., "all the rights to the spring of water and all the aqueduct rights and privileges which were reserved and excepted in the deed which Thomas F. Plunkett gave to Abraham Burbank, dated March 22, 1850, and which were conveyed by said Plunkett to Wellington H. Tyler by deed dated June 22, 1850, and which were conveyed by said Tyler to said Agnew by deed dated November 24, 1854, which right hereby conveyed is as follows : " (here followed a description in the terms substantially of the reservation in the deed of Plunkett to Burbank :) "meaning and intending hereby to convey to said Goodrich all the aqueduct rights connected with said spring on the lands of said Burbank" "from said spring to the county road," "so that from said spring said Goodrich shall have the right to maintain the aqueduct from said spring to the north line of said county road and to dispose of the water entirely as he pleases, said Agnew conveying his entire rights to said spring, water and aqueduct, and taking up the aqueduct south of said county road."

At the time of this deed from Agnew to the plaintiff the pipe ed from the spring in a southerly direction to the county road,

then turned westerly and ran under the road a short distance, and then turned and ran southerly again to its point of discharge on Agnew's land, two hundred and fifty-five rods from the spring. Soon afterwards the plaintiff dug up part of the pipe lying north of the county road, and, beginning at a point eighty-three rods and ten links from the spring and at an almost equal distance north of the county road, changed the course of the pipe by turning it in a westerly direction at nearly a right angle from its former course, and conducted it seventy rods and fifteen links to a point on the plaintiff's own land, further north from the county road than the point at which he changed its course.

· The new point of termination of the one and one quarter inch pipe on the plaintiff's land was therefore one hundred and one rods nearer to the spring, and it was also two and one half feet lower in level than the old point of termination on Tyler's (afterwards Agnew's) land. There was testimony tending to show that at this new point of termination it communicated with four smaller pipes through which the water it conveyed was distributed, the first leading to the plaintiff's barn, tapped by the second which led to his house and the third which led to a fountain, and the fourth leading to a neighbor's house, and that these four pipes together delivered a quantity of water which " would very nearly approximate " to the quantity delivered from the one and one quarter inch pipe at its former point of discharge on Tyler's land, namely, three and ninety-six one-hundredths gallons per minute, but that the discharge of the one and one quarter inch pipe at its new point of termination, if not thus obstructed and limited by these smaller pipes, would be at the rate of five and forty one-hundredths gallons per minute.

On these facts the defendant asked the judge to instruct the jury that the change in the direction and location of the pipe having increased its capacity to deliver water, the plaintiff could not maintain his action. But the judge refused to give this instruction, and did instruct them that the deed of Agnew to the plaintiff conveyed to the plaintiff the right which was reserved by Plunkett when Plunkett conveyed to the defendant the land where the spring was situated ; that it was a right to draw from

the spring as much water as could flow in a pipe of one and one quarter inch inside calibre, provided the quantity so drawn did not exceed the quantity that could be drawn through such a pipe laid and directed as was the pipe which was substituted by Tyler, according to the terms of Plunkett's reservation, for the larger pipe which was in use at the time of the reservation; that the plaintiff did not exceed his right if he drew through a pipe of that calibre so laid and directed as to be capable of conducting more water than he had a right to draw if it could discharge to its full capacity, but so connected with smaller pipes and restricted by them that it together with the smaller pipes, considered as one conduit, could not discharge a quantity of water exceeding that which he had a right to draw; and that if the defendant had interfered with the exercise by the plaintiff of his right thus defined, the plaintiff might recover damages.

There was also testimony that at the time of Plunkett's conveyance to the defendant the spring flowed up into a tub which was held by an embankment of earth, and from this tub the pipe led which conveyed the water to Tyler's land; that the water of a small brook had previously overflowed occasionally into the spring; that Tyler wanted to keep the water of the brook out of the spring and arranged to do so; that Tyler afterwards dug a channel which turned it into the spring, and kept it running so for three or four months and then dammed it off; that it was running into the spring at the time of Plunkett's conveyance to the defendant, (but whether by reason of a natural overflow or by this action of Tyler does not by the testimony as reported in the bill of exceptions distinctly appear;) that Tyler instead of the tub and earthen embankment substituted a reservoir of stone, " and utterly excluded the waters of the brook from the reservoir;" and that the defendant "restored the waters of the brook to the condition in which they were when he purchased."

The defendant asked the judge to rule thereupon, that if the spring was near the bed of a brook which flowed about the tub placed therein, he would not be liable for any impurity which might be occasioned to the water of the spring by the flowing

of the brook in its old channel, and that if the plaintiff or his grantors had diverted the water of the brook, the defendant had a right to turn it back into the old channel. But the judge refused so to rule, and did instruct the jury that if the defendant conducted into the spring the water of a brook which without the defendant's act would not have flowed into it, and if the purity of the spring was thereby affected to the injury of the plaintiff's use and enjoyment of his right to draw water from it, the defendant was liable in damages for such injury.

A verdict was returned for the plaintiff; and the defendant alleged exceptions.

*J. E. Field & E. M. Wood,* for the defendant. 1. Provisions in a deed poll are to be taken most strongly against the grantor. *Adams* v. *Frothingham,* 3 Mass. 361. *Worthington* v. *Hylyer,* 4 Mass. 205. In the deed from Plunkett to the defendant the right was reserved to "replace" a pipe, not to put it in a new place, and the right to take so much water as would run in the new pipe thus "substituted." If the words quoted have two constructions, the one most favorable to the defendant should be adopted. When the substitution was made by Tyler, was not all right of substitution exhausted? 2. In the deed from Agnew to the plaintiff the route was designated. The right granted was to take water "from said spring to the county road." Instead of following this designated route, the route established by the plaintiff does not approach the county road. 3. The new pipe at its point of termination on the plaintiff's land has a capacity to deliver more water per minute than he has a right to draw. This capacity he limits by attaching other pipes of smaller calibre and orifice. But the water is on his ground, subject to his control. He may change his small pipes so as to draw more water than he has a right to, without the knowledge of the defendant, who has no right to go there to watch or regulate. 4. It does not appear that Tyler had any license from the defendant to divert the waters of the brook from their old bed on the defendant's land. If he had, it was revocable at any time if Tyler was living; and if Tyler was dead, it ceased when he died. *Cook* v. *Stearns,* 11 Mass. 533. *Stevens* v. *Stevens,* 11

Met. 251. *Ruggles* v. *Lesure*, 24 Pick. 190. *Morse* v. *Copeland*, 2 Gray, 302. Angell on Water Courses, § 285.

*S. W. Bowerman*, for the plaintiff. The plaintiff received by mesne conveyances all the rights in the spring and aqueduct reserved by Plunkett in his deed to the defendant. *Goodrich* v. *Burbank*, 12 Allen, 459. The reservation in that deed limits the quantity of water, but not the size or capacity of the pipe through which it is to be taken. The plaintiff, having a right to take as much water as would run to the premises of Tyler in a pipe of one and one quarter inch inside calibre, had also a right to conduct it to a point nearer the spring and lower in level, through the same pipe, provided it was so arranged as not to discharge more water. If not so arranged, the defendant had only the right to check or divert the excess, not the whole flow. The plaintiff's right in the spring gave him the right to protect it from impurities caused by the occasional natural overflow of the brook, and still more against impurities caused by the deliberate turning of the brook into the spring by the defendant.

BIGELOW, C. J. We see no reason for doubting the correctness of the conclusions to which we came concerning the rights of the parties to this suit as stated in 12 Allen, 459. The course of the second trial and the instructions of the presiding judge in submitting the case to the consideration of the jury seem to have been substantially in conformity to the rules and principles by which we have held that the use of the water of the spring in controversy as between these parties is to be regulated and governed.

But a new question appears to have arisen out of the facts proved at the last trial. The evidence tended to show that the waters of a natural stream or brook had been diverted from their original channel at the time the reservoir was built for the purpose of holding and keeping pure the waters of the spring. It was also proved that the waters of this brook, before such diversion, when flowing in their natural course occasionally ran into the spring. The defendant also offered to show that prior to the time when this action was brought he restored the waters of the brook to their original channel where they passed through his

own land. In this state of the evidence, the defendant asked that the jury might be instructed that he could not be held liable for damages caused by impurities in the waters of the spring, which arose from the waters of the brook while flowing in their natural course, and that he had a right to restore the brook to its original channel on his own land, notwithstanding some impurities might in consequence thereof pass into the reservoir. This instruction was refused. But it seems to us to be very clear that it ought to have been given. The plaintiff had acquired no right as against the defendant to continue the diversion of the ancient stream, nor had he any such title to maintain his reservoir in the condition in which it was put by a previous owner of the spring as would warrant him in restraining the defendant from restoring the original course of the stream within the limits of his own land. Upon the report of the evidence on the exceptions, we cannot see that this omission to instruct the jury may not have operated seriously to the prejudice of the defendant. One of the causes of action set forth in the declaration is for defiling the waters of the spring. This may have been caused in part at least by the overflow of the stream in consequence of the acts of the defendant in restoring, as he had a right to do, the waters of the brook to their ancient course. By the refusal of the court to give the instructions for which the defendant asked, the jury may have been led to include in their estimate of damages the defilement of the waters of the spring occasioned by the lawful acts of the defendant done upon his own premises. For this reason, we think the order must be

*Exceptions sustained.*